UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YAFAH GRAY,

                          Plaintiff,

        -v-                                                          CIVIL ACTION NO.: 20 Civ. 4636 (SLC)

                                                                    <u>OPINION & ORDER</u>

KILOLO KIJAKAZI,[1] Acting Commissioner of Social
Security,

                          Defendant.

**SARAH L. CAVE**, United States Magistrate Judge.

## I.      <u>INTRODUCTION</u>

Plaintiff Yafah Gray ("Ms. Gray") commenced this action pursuant to Section 205(g) of the

Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g).  Ms. Gray seeks review of the

decision by the Commissioner (the "Commissioner") of the Social Security Administration

("SSA"), denying her applications for Supplemental Security Income ("SSI") and Disability

Insurance Benefits ("DIB") under the Act.   Ms. Gray contends that the decision of the

Administrative Law Judge dated May 23, 2019 (the "ALJ Decision") "is not supported by

substantial evidence and applies an erroneous standard of law[,]" and asks the Court to reverse

the Commissioner's finding that she was not disabled and remand for an award of SSI and DIB

benefits, or a new hearing.  (ECF No. 1 at 1–2).

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security Administration.  See <u>Young v. Kijakazi</u>, No. 20 Civ. 3604 (SDA), 2021 WL 4148733, at *1 n.1 (S.D.N.Y. Sept. 13, 2021). Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of the Court is respectfully directed to substitute Kilolo Kijakazi for Andrew Saul as the Defendant in the caption of this action.

On February 5, 2021, Ms. Gray filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).[2]  (ECF No. 10 ("Ms. Gray's Motion")).   On April 6, 2021, the Commissioner cross-moved for judgment on pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (ECF No. 12 (the "Commissioner's Motion")).  For the reasons set forth below, Ms. Gray's Motion is GRANTED, the Commissioner's Motion is DENIED, and the case is remanded for further proceedings.

## II.   BACKGROUND

### A.  Procedural Background

On September 22, 2016 and October 25, 2016, Ms. Gray filed applications for DIB and SSI, respectively, alleging disability due to injuries to her left knee, left ankle, back, right arm and shoulder, neck, and both hands and wrists, with an onset date of September 9, 2015 (the "Onset Date").  (Administrative Record ("R.") (ECF No. 9) 64–65, 74–75, 165–80).  On January 4, 2017, the SSA denied Ms. Gray's applications.  (R. 62–83).  At Ms. Gray's request, on May 6, 2019, ALJ Ryan A. Alger conducted a hearing by videoconference (the "Hearing").  (R. 42–61, 102–03). On May 23, 2019, ALJ Alger issued the Decision finding that Ms. Gray was not disabled under the Act.  (R. 10–25).  On May 12, 2020, the ALJ Decision became the final decision of the Commissioner when the Appeals Council denied Ms. Gray's request for review.  (R. 1–6).

---

[2] "As Rule 56 is generally not considered the proper procedural vehicle for challenging a disability determination of the Commissioner, see Mersel v. Heckler, 577 F. Supp. 1400, 1401 n.1 (S.D.N.Y. 1984), this Court will treat Plaintiff's motion as a motion under Rule 12(c)." Anzola v. Berryhill, No. 18 Civ. 11217 (VSB) (DCF), 2019 WL 10630956, at *1 n.2 (S.D.N.Y. Dec. 20, 2019), adopted by, 2020 WL 5646329 (S.D.N.Y. Sept. 21, 2020).

B. **Factual Background**

1. **Non-medical evidence**

Ms. Gray was born in 1969 and was 45 years old on the alleged Onset Date.  (R. 64, 74).
She is a high school graduate.  (R. 48).  From June 1995 to September 2015, she worked as a
"Developmental Aide," assisting handicapped adults with their daily activities.  (R. 48–49, 55–56,
72, 205).  In 2009, Ms. Gray was involved in a motor vehicle accident, which resulted in "cervical
and lumbosacral injuries."  (R. 390; see R. 376).  On July 10, 2011, "[w]hile [Ms. Gray was] working
as a development aide, a combative male resident suddenly grabbed her and pushed her up
against a wall and violently shook her[,]" causing injury to her neck and lower back.  (R. 503).  On
September 23, 2013, Ms. Gray was injured at work when "a cabinet door fell on [her] left knee
and foot."  (R. 306).

2. **Medical evidence**

Ms. Gray and the Commissioner have each provided detailed summaries of the medical
evidence in the Record.  (See ECF Nos. 11 at 4–14; 13 at 6–18; 14 at 6–12).  The Court adopts
both parties' summaries as accurate and complete and sets forth those facts relevant to the
Court's analysis.  (See § III.B infra).

C. **Administrative Proceedings**

1. **The Hearing**

On May 6, 2019, ALJ Alger conducted the Hearing, at which Ms. Gray was represented by
counsel.  (R. 42–61).  Ms. Gray described the nature and symptoms of her impairments.  (R. 48–
54).  She testified, inter alia, that, due to her impairments, she experienced "pain that shoots up
and down [the] back of [her] neck and shoulder" as well as pain and swelling in her leg, was

unable to "do the things [she] used to do all the time[,]" and was taking "a lot" of pain medication, including oxycodone, methadone, and Percocet.  (R. 51–52).

Vocational Expert ("VE") Richard Hall also testified at the Hearing.  (R. 56–60).  VE Hall classified Ms. Gray's past work as that of a Residential Care Aide, Dictionary of Occupational Titles ("DOT")[3] code 355.377-018, a "medium" category position.[4]  (R. 56–57).  ALJ Alger then posed the following hypothetical individual:

> someone with the same age, education, and work experience as [Ms. Gray], [who] could perform light work as defined; however, they could perform no overhead work with the right upper extremity; they could occasionally climb stairs and ramps, but no ladders, ropes, or scaffolds; they could occasionally perform bending, stooping, and crouching; no kneeling or crawling.

(R. 57).[5]  VE Hall testified that this hypothetical individual could not perform Ms. Gray's past work, but could perform the following three positions:

- Cashier, DOT code 211.462-010, a light position of which there were approximately 130,000 in the national economy;

- Office Helper, DOT code 239.567-010, a light position of which there were approximately 115,000 in the national economy; and

---

[3] The DOT is "an accepted basis for vocational opinion according to the Commissioner's rules."  Henry v. Colvin, 12 Civ. 6822 (KBF), 2015 WL 9238959, at *7 n.7 (S.D.N.Y. Dec. 17, 2015) (citing Brault v. Comm'r Soc. Sec. Admin., 683 F.3d 443, 446 (2d Cir. 2012)).

[4] The regulations provide that "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

- Retail Marketer, DOT code 209.587-034, a light position of which there were approximately 120,000 in the national economy.

(R. 57–58).  VE Hall testified that no jobs existed for the same hypothetical individual if "the person needed to take rest breaks throughout the day, in addition to normal breaks given, at least three times a day for 15 minutes or more[.]"  (R. 59).

### 2.  The ALJ Decision and Appeals Council review

On May 23, 2019, ALJ Alger issued his Decision finding that Ms. Gray had not been disabled from the Onset Date and denying Ms. Gray SSI and DIB.  (R. 10–25).

ALJ Alger followed the five-step disability determination process.  At step one, the ALJ found that Ms. Gray had not engaged in substantial gainful activity since the alleged Onset Date.  (R. 12).  At step two, ALJ Alger found that Ms. Gray had the following severe impairments: degenerative disease of both the cervical and lumbar spine; arthritis of the left knee and left ankle; status-post right rotator cuff repair; and obesity.  (R. 13–16).

At step three, ALJ Alger found that Ms. Gray did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Act.  (R. 16–17).  (The impairments listed in 20 CFR Appendix 1, Subpart P, Part 404 are known as the "Listings.").  Specifically, the ALJ found that Ms. Gray's: (i) shoulder and knee impairments did not satisfy Listing 1.02 for major joint dysfunction; (ii) spine-related impairments did not satisfy Listing 1.04 for disorders of the spine; and (iii) arthritis did not satisfy Listing 14.09 for inflammatory arthritis.  (R. 16).[6]

---

[6] The Court notes that Listings 1.02 and 1.04 were eliminated as of April 2, 2021.  See 20 C.F.R. Part 404, Subpart P, Appendix 1.  Because they were in effect at the time of the ALJ's Decision, however, they still control for purposes of the Court's analysis.  See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012)

ALJ Alger then assessed Ms. Gray's RFC as being able to:

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that [she] could perform no overhead work with the right upper extremity[,] . . . could occasionally climb ramps and stairs, but no ladders, ropes, or scaffolds[,] . . . could occasionally perform bending stooping, and crouching[, and] could not kneel or crawl.

(R. 17–18).

In reaching his RFC determination, ALJ Alger concluded that, while Ms. Gray's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 18). The ALJ noted, inter alia, that, "[d]espite her reports of pain radiating into her extremities, electrodiagnostic testing revealed normal findings, noting no evidence of radiculopathic, neuropathic, or myopathic process[,]" and that a 2018 examination showed Ms. Gray "retained nearly full strength of the back" and "[a] normal gait[.]" (R. 19 (citing R. 455, 501–08)). ALJ Alger also noted that, during a 2016 consultative examination, Ms. Gray "demonstrated a full range of cervical and lumbar spine motion." (R. 19 (citing R. 405–10)).

With respect to the non-medical evidence, the ALJ noted that: (i) in September 2015, Ms. Gray "admitted to exercising three-to-four times per week" (R. 20 (citing R. 271)); (ii) in November 2016, she "reported that she enjoyed travelling three times per year and exercising several times per week" and "admitted to a consultative examiner that she could cook, clean,

---

(applying Listing "in effect when the ALJ adjudicated [the challenged] disability claim"); Kiser v. Saul, 821 F. App'x 211, 213 n.1 (4th Cir. 2020) ("the version of the listings in effect as of the date of the Commissioner's final decision controls."); Distefano v. Berryhill, 363 F. Supp. 3d 453, 466 n.5 (S.D.N.Y. 2019) ("Although the listings have since been revised, [courts] apply the listings that were in effect at the time the ALJ rendered his decision.").

wash laundry, shop, shower, and dress herself" (R. 20–21 (citing R. 212–19, 405–10)); (iii) in December 2016, Ms. Gray "reported that she could clean, shop, cook and prepare meals, wash laundry, perform general cleaning, and use public transportation" (R. 21 (citing R. 415)); and (iv) in February 2019, she "admitted that she was independent in dressing, feeding, grooming, and taking care of personal hygiene, and reported that she used the subway to travel[.]"  R. 21 (citing R. 506)).

As to the medical opinions in the Record, ALJ Alger gave "partial" weight to the opinion of Allen Meisel, M.D., who performed a consultative examination of Ms. Gray on November 17, 2016.  (R. 21; see R. 405–410)).  Dr. Meisel opined, inter alia, that Ms. Gray "had mild limitations of standing, walking, climbing stairs, bending, and kneeling."  (R. 21 (citing R. 405–410)).  The ALJ acknowledged that, "as Dr. Meisel only evaluated [Ms. Gray] on a single occasion, his opinions are of limited longitudinal value."  (R. 21).  ALJ Alger concluded, however, that "Dr. Meisel's opinions are consistent with his own examination findings and [Ms. Gray]'s reported daily activities at that time."  (R. 21).

ALJ Alger also gave "partial" weight to statements of Fenar Themistocle, M.D., a pain management specialist who treated Ms. Gray from at least June 2017 through September 2018. (R. 21–22; see R. 446–61, 473–76, 492–94).  The ALJ noted that, "[i]n various statements [dated between June 13, 2017 and April 17, 2018], Dr. Themistocle and other providers opined that [Ms. Gray] needed to avoid heavy lifting, and that she had 30% disability of the neck and lower back and 70% disability of the left ankle and knee."  (R. 21 (citing 441–78; see R. 473)).  Additionally, on May 4, 2018, Dr. Themistocle opined that Ms. Gray was limited to "less than sedentary work." (R. 481 (the "May 2018 Assessment")).  Specifically, he opined that she could never lift, carry,

pull, push, climb, kneel, bend, stoop, squat, or reach, and that she could "occasionally" sit, stand, and walk.  (R. 481).[7]  In affording partial weight to these opinions, the ALJ reasoned:

> Overall, Dr. Themistocle's opinions are only partially consistent with the evidence of record as a whole, which showed that [Ms. Gray] experienced some pain, tenderness, and a reduced range of motion of the upper and lower back, left knee and ankle, and right shoulder along with an antalgic gait at times due to her severe physical conditions, but also showed that she often appeared in no acute distress with full strength of the extremities, that she often had a normal gait, and that she could cook, clean, wash laundry, shop, groom and dress herself, and use public transportation despite her complaints of limitation.  While this evidence supports some significant postural and exertional restriction, it does not support a less than sedentary functional capacity or the never-to-occasional postural, manipulative, and non-exertional level of limitation indicated here by Dr. Themistocle.  Dr. Themistocle also failed to explain his disability ratings, which provide little insight into the severity of [Ms. Gray]'s abilities or limitations.  Moreover, this level of limitation is inconsistent with the documented ability of [Ms. Gray] to perform chores, cook, shop, wash laundry, and perform other tasks. Dr. Themistocle also offered no objective findings to support the conclusions contained in [the May 2018 Assessment], and he failed to explain his statements of disability or support them with explanation or objective findings . . . . Even so, as Dr. Themistocle is a treating source with a longitudinal history of treating [Ms. Gray]'s conditions and he offered a functional assessment that is somewhat consistent with the evidence noted above, his opinions hold some value in assessing the severity of [Ms. Gray]'s limitations.

(R. 22 (internal Record citations omitted)).

Finally, the ALJ gave "little" weight to the opinions of Hermant Patel, M.D., J. Chacko, M.D., Pramila Kolisetty, M.D., Ashley Simela, M.D., and Douglas Schwartz, D.O.  (R. 22).[8]  ALJ Alger

---

[7] In the May 2018 Assessment, the term "occasionally" is defined as indicating that an individual "can perform [the] activity up to 1/3 of the time."  (R. 481).

[8] The ALJ Decision reflects that:

> In a March 2015 report, Dr. Patel opined that [Ms. Gray] would be incapacitated from work from March 2015 through June 2015, that she needed a reduced number of work hours, and that flare-ups would prevent her from performing work activity one or two days per month ([R. 332–35]).  In a November 2015 functional report, Dr. Patel opined that [Ms. Gray] had no work-related restrictions from her knee condition, but that she was totally disabled from September 2015 through December 2015 ([R. 305–06]). In a series of opinions from October 2015 through March 2016, Dr. Chacko and Dr. Kolisetty opined that [Ms. Gray] had between a 50-100% temporary impairment, and opined either

determined that "these opinions are inconsistent with and unsupported by the evidence of record as a whole," and noted, inter alia, that "these providers failed to provide functional assessments." (R. 23).

At step four, ALJ Alger concluded that Ms. Gray was unable to perform her past relevant work. (R. 23). At step five, the ALJ concluded, based on the testimony of VE Hall, "that, considering [Ms. Gray's] age, education, work experience, and [RFC], [she] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy[,]" and, therefore, Ms. Gray was not disabled. (R. 25).

On May 12, 2020, the Appeals Council denied Ms. Gray's request for review of ALJ Alger's decision. (R. 1–6).

### III.   DISCUSSION

#### A. Legal Standards

##### 1. Standard of review

Under Rule 12(c), a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

---

that she could return to work on a specific date or opined that she could not return to work due to severe left knee pain ([R. 345–60, 365–67]). Then, in May 2016, Dr. Kolisetty opined that [Ms. Gray] could return to work ([R. 371]). In May 2017, Dr. Simela opined that she saw no reason why [Ms. Gray] could not return to work ([R. 617]). In treatment records from 2018, Dr. Schwartz opined that [Ms. Gray] was disabled from her work as a developmental aide and that she overall markedly disabled ([R. 505, 508]).
(R. 22).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."   42 U.S.C. § 405(g).   A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error.   See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).   Judicial review, therefore, involves two levels of inquiry.   First, the Court must decide whether the ALJ applied the correct legal standard.   See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008).   Second, the Court must decide whether the ALJ's decision was supported by substantial evidence.   Id.   "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."   Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009).

Substantial evidence is "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted).   The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts.   See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).   In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly.   See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).   The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the

claimant.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc.

Sec., 143 F.3d 115, 118 (2d Cir. 1998).

### 2.  Eligibility for benefits

For purposes of SSI and DIB benefits, one is "disabled" within the meaning of the Act, and

thus entitled to such benefits, when she is "unable to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not

less than twelve months."  42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be

"of such severity that [the claimant] is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. § 1382c(3)(B).  In reviewing a claim

of disability, the Commissioner must consider:  "(1) objective medical facts; (2) diagnoses or

medical opinions based on those facts; (3) subjective evidence of pain and disability testified to

by claimant and other witnesses; and (4) the claimant's background, age, and experience."

Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential

five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v) and 20 C.F.R. § 416.920(a)(4)(i)–(v).

The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity.  If not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work

experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.   Assuming the claimant does not have a listed impairment, the <u>fourth</u> inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  <u>Finally,</u> if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

<u>Bush v. Shalala</u>, 94 F. 3d 40, 44–45 (2d Cir. 1996) (quoting <u>Rivera v. Schweiker</u>, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof.  At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform.  <u>See</u>, <u>e.g.</u>, <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009).  In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid." <u>Zorilla v. Chater</u>, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### 3.  <u>Duty to develop the record</u>

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  <u>Perez v. Chater</u>, 77 F.3d 41, 47 (2d Cir. 1996) (citing <u>Echevarria v. Sec'y of Health & Human Servs.</u>, 685 F.2d 751, 755 (2d Cir. 1982)).  "This duty exists even when the claimant is represented by counsel," as was the case here.  <u>Id.</u>  The ALJ's obligation is set forth in the SSA regulations:  "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical evidence from your own medical sources . . . when you give us permission to request the reports."  20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1).  Where an ALJ "fail[s] to develop the record sufficiently to make any appropriate

determination" about the claimant's disability, remand is appropriate.  Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999) (remanding where ALJ "failed to obtain adequate information" from claimant's treating physician, "failed to seek potentially relevant information from a number of other doctors and treatment facilities," and "jumped to conclusions that were not adequately supported by" the record).  "The duty to develop 'includes ensuring that the record as a whole is complete and detailed enough to allow the ALJ to determine the claimant's RFC.'"  Van Dyne v. Saul, No. 20-CV-260 (MKB), 2021 WL 1210460, at *14 (E.D.N.Y. Mar. 31, 2021) (quoting Sigmen v. Colvin, No. 13-CV-268, 2015 WL 251768, at *11 (E.D.N.Y. Jan. 20, 2015)).

To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources.  20 C.F.R. §§ 404.1512(b), 416.912(b).  Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity."  Casino-Ortiz v. Astrue, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007).  When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  20 C.F.R. §§ 404.1520b, 416.920b.

The Act authorizes a court, when reviewing decisions of the SSA, to order further proceedings:  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004).  If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the Court will remand the case for further

development of the evidence or for more specific findings.  <u>Rosa</u>, 168 F.3d at 82–83 (quoting

<u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further

findings or explanation will clarify the rationale for the ALJ's decision.  <u>Pratts</u>, 94 F.3d at 39.  If,

however, the reviewing court concludes that an ALJ's determination to deny benefits was not

supported by substantial evidence, a remand solely for calculation of benefits may be

appropriate.  <u>See</u>, <u>e.g.</u>, <u>Butts</u>, 388 F.3d at 386 (discussing <u>Curry v. Apfel</u>, 209 F.3d 117, 124 (2d Cir.

2000)).

### 4.  **The Treating Physician Rule**[9]

The regulations require the ALJ to give "controlling weight" to "the opinion of a claimant's

treating physician as to the nature and severity of the impairment . . . so long as it is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record[,]" known as the "Treating

Physician Rule."  <u>Burgess</u>, 537 F.3d at 128 (internal citation omitted); <u>accord</u> <u>Green-Younger v.</u>

<u>Barnhart</u>, 335 F.3d 99, 106 (2d Cir. 2003); <u>Correale-Englehart v. Astrue</u>, 687 F. Supp. 2d 396, 426

(S.D.N.Y. 2010).  "This preference is generally justified because treating sources are likely to be

'the medical professionals most able to provide a detailed, longitudinal picture' of a plaintiff's

medical impairments and offer a unique perspective that the medical tests and SSA consultants

---

[9] The Court notes that "[i]n March 2017, the Social Security Administration published regulations that effectively abolished the Treating Physician Rule for claims filed on or after March 27, 2017."  <u>Dorta v.</u> <u>Saul</u>, No. 19 Civ. 2215 (JGK) (RWL), 2020 WL 6269833, at *3 n.8 (S.D.N.Y. Oct. 26, 2020).  Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Because Ms. Gray filed her applications in 2016 (64–65, 74– 75), the Treating Physician Rule applies.

are unable to obtain or communicate." Correale-Engelhart, 687 F. Supp. 2d at 426 (quoting 20 C.F.R. § 416.927(c)(2)); see 20 C.F.R. § 404.1527.

If the ALJ determines that a treating physician's opinion is not controlling, he or she is nevertheless required to consider the following factors in determining the weight to be given to that opinion:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence provided to support the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the Commissioner's attention that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c).  The ALJ must give "good reasons" for not crediting the plaintiff's treating physician.  20 C.F.R. § 404.1527(c)(2); see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (explaining that Appeals Council had "an obligation to explain" the weight it gave to the opinions of the non-treating physicians).  After considering these factors, the ALJ must fully set forth his reasons for the weight assigned to the treating physician's opinion.  Burgess, 537 F.3d at 129.

While the ultimate issue of disability is reserved to the Commissioner, the regulations make clear that opinions from one-time examining sources that conflict with treating source opinions are generally given less weight.  20 C.F.R. § 404.1527(c)(2).  See also Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); Cabreja v. Colvin, No. 14 Civ. 4658 (VSB), 2015 WL 6503824, at *30 (S.D.N.Y. Oct. 27, 2015) (explaining that opinions of one-time consultants should not overrule those provided by the treating medical sources unless there are "serious errors" in

treating sources' opinions).  Failing to apply proper weight to a treating physician's opinion is reversible error.  Greek v. Colvin, 802 F.3d 370, 376 (2d Cir. 2015).

**B.  Evaluation of the ALJ's Decision**

Ms. Gray contends that the ALJ committed legal error at steps three and four of the sequential analysis.  Specifically, she argues that, at step three, the ALJ failed to properly evaluate whether her impairments met or medically equaled Listing 1.04A.  (ECF No. 11 at 16–17).  With respect to ALJ Alger's step-four RFC determination, Ms. Gray argues that ALJ Alger: (i) failed to comply with Social Security Ruling ("SSR") 96-8p; (ii) mischaracterized the evidence; and (iii) failed to properly evaluate Ms. Gray's subjective complaints of pain.  (Id. at 17–21).  Ms. Gray also argues that the RFC determination was not supported by substantial evidence.  (Id. at 21–23).

The Court finds that the ALJ properly assessed Ms. Gray's spine impairments under Listing 1.04A.  The Court agrees with Ms. Gray, however, that the ALJ's RFC determination was not supported by substantial evidence, specifically with respect to her ability to perform the standing and walking requirements of light work.  Accordingly, remand is appropriate to allow the ALJ to properly assess Ms. Gray's functional limitations.

**1.  The ALJ's Listing determination as to Ms. Gray's spine impairments**[10]

**a.  Listing determination standard**

In cases where a disability claim is premised upon a listed impairment, the ALJ must set forth a clear rationale in support of the determination whether a listed impairment exists.  Berry v. Schweiker, 675 F. 2d 464, 468–69 (2d Cir. 1982) (per curiam) (affirming denial of benefits where

---

[10] Ms. Gray does not challenge—and the Court finds no reason to disturb—the ALJ's Listing determinations as to her other severe impairments.

portions of the ALJ's decision indicate his conclusion was supported by substantial evidence).  An

ALJ's failure to include a specific rationale for rejecting a Listing at step three may require remand

if the determination was not supported by substantial evidence, "especially where credibility

determinations and inference drawing is required of the ALJ."  Id. at 469; see Salmini v. Comm'n

of Soc. Sec., 371 F. App'x 109, 112 (2d Cir. 2010) (finding that although decision did not detail

why plaintiff's cardiac condition failed to meet a listing, it was supported by substantial evidence

including plaintiff's testimony that he engaged in "a broad range of activities on a daily or

occasional basis").

Thus, an ALJ's reliance on "boilerplate language that provides no meaningful explanation

for his conclusion that plaintiff did not meet [a specified Listing]" requires remand where the

ALJ's analysis at other steps "does not shed light on his conclusion at step three."  Ryan v. Astrue,

5 F. Supp. 3d 493, 508 (S.D.N.Y. 2014); accord Twyne ex rel. Johnson v. Barnhart, No. 01 Civ. 2264

(LMM), 2003 WL 22299198, at *10 (S.D.N.Y. Oct. 7, 2003) (remanding where ALJ's minimal

consideration of whether impairments were equivalent to any Listings prevented the court from

determining whether the ALJ's conclusions were supported by substantial evidence); cf. Calzada

v. Astrue, 753 F. Supp. 2d 250, 276 (S.D.N.Y. 2010) (adopting report and recommendation finding

legal error at step three where the ALJ "did not even make mention of the list, much less discuss

his conclusion regarding the severity of plaintiff's impairments in relation to the listed

disabilities.").

### b.  Listing 1.04A

At the time of the ALJ Decision, disorders of the spine were evaluated under Listing 1.04.

In relevant part, the following constituted disabling conditions under that Listing:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2021).  "To satisfy Listing 1.04(A), it is the plaintiff's burden to 'demonstrate that [his] disability [meets] all of the specified medical criteria of a spinal disorder.'" Abualteen v. Saul, No. 19 Civ. 2637 (DF), 2020 WL 5659619, at *23 (S.D.N.Y. Sept. 23, 2020) (quoting Otts v. Comm'r of Soc. Sec., 249 Fed. App'x 887, 888 (2d Cir. 2007) (internal quotation omitted)).  "'[A]n impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).

### c. Analysis

The Court agrees with the Commissioner that the ALJ properly found Ms. Gray's spine impairments did not meet or medically equal Listing 1.04A.  With respect to these impairments, the ALJ Decision reflects, inter alia, the following:

the record showed that [Ms. Gray] began experiencing upper and lower back pain after a motor vehicle accident in 2009 ([R. 376–404]).  During the relevant period, [Ms. Gray] continued to report ongoing symptoms of back pain that radiated into her bilateral lower extremities ([R. 405–10; 441–68; 469–78; 486–508]).  Diagnostic images of [Ms. Gray]'s cervical spine showed disc bulging and osteophytes at the C4-6 region of the spine with disc protrusion and some cord deformities ([R. 462–63]).  Imaging of [Ms. Gray]'s lumbar spine showed multilevel disc bulging ([R. 469–78]).  Physical examinations from the relevant period showed tenderness and spasms of the back with reports of a painful range of upper and lower back motion, an antalgic gait, and positive straight leg test findings at times ([R. 441–68; 469–78; 486–508]).  However, despite these findings, the record noted that [Ms. Gray] reported significant improved in symptoms with injections ([R 469; 486–94]).  Despite her reports of pain radiating into her extremities,

electrodiagnostic testing revealed normal findings, noting no evidence of radiculopathic, neuropathic, or myopathic process ([R. 455]). Examinations also noted that [Ms. Gray] retained nearly full strength of the back as well ([R. 501–08]). A normal gait was noted at times as well ([R. 501–08]). In a consultative examination, [Ms. Gray] demonstrated a full range of cervical and lumbar spine motion ([R. 405–10]).

(R. 19).

As the ALJ's analysis reflects, the Record contains evidence suggesting that Ms. Gray's spine impairments satisfied some of Listing 1.04A's criteria during the relevant time period. With respect to nerve root compression, an August 16, 2017 MRI showed disc building at the C4-C5 and C5-C6 vertebrae (R. 462–63), and, on October 17, 2018, Dr. Schwartz diagnosed "[d]erangements [of the] cervical/lumbosacral spines with myofasciitis with probable underlying radiculopathy and/or disk pathology." (R. 504; see also R. 506 (notes from February 4, 2019 evaluation by Dr. Schwartz, reiterating diagnoses of cervical/lumbosacral spine derangement "with probable underlying radiculopathy")).[11] Regarding limited motion of the spine, the Record contains several findings of "painful and limited" flexion, extension, and rotation of Ms. Gray's spine. (R. 470, 474, 489; see R. 504). The Record also includes several positive straight-leg test results between June 2017 and February 2019. (See 443, 470, 474, 489, 504, 507).

The Record does not, however, include evidence indicating that Ms. Gray's spine impairments resulted in the "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss" necessary to satisfy Listing 1.04A. Ms. Gray claims that the Record contains "evidence of motor loss and diminished sensation in the cervical" and lumbar spine. (ECF No. 11 at 16–17 (citing R. 497–99; 503–07)). Contrary to Ms. Gray's

---

[11] "[A] diagnosis of radiculopathy [can serve] as a basis for satisfying the first sub-criterion" of Listing 1.04A. Abualteen, 2020 WL 5659619, at *24 (citation omitted).

assertion, the very records she cites indicate that she showed nearly full muscle strength in her

back.  (See R. 504 ("Muscle grade strength 4/5 cervical/lumbosacral paraspinals; 4/5 right deltoid,

supraspinatus, infraspinatus; 4-/5 right teres minor, subscapularis."); R. 507 (same); see also

R. 443 (June 13, 2017 exam noting "Muscle Strength: +4/5 in all muscle groups")).

While these records suggest somewhat less-than-full motor strength, "[o]ccasional

reports of slightly diminished motor strength . . . are insufficient to satisfy Listing 1.04 (A)'s

requirement of 'motor loss (atrophy with associated muscle weakness or muscle weakness).'"

Lisandra A. v. Comm'r of Soc. Sec., No. 20 Civ. 4796 (GRJ), 2022 WL 522444, at *5 (S.D.N.Y. Feb.

22, 2022) (citing Killings v. Comm'r of Soc. Sec., 15 Civ. 8092 (AT) (JCF), 2016 WL 4989943, at *11,

(S.D.N.Y. Sept. 15, 2016) ("At its worst, the plaintiff's motor strength was reported as 'slightly

diminished' or rated at '4/5.'  Therefore, the ALJ's finding that the plaintiff's spinal impairment

did not meet Listing 1.04 is supported by substantial evidence") (internal citations omitted),

adopted by, 2016 WL 6952342 (S.D.N.Y. Nov. 28, 2016); see Aguirre v. Saul, No. 20 Civ. 4648

(GWG), 2021 WL 4927672, at *6 (S.D.N.Y. Oct. 22, 2021) (finding Listing 1.04A "not satisfied"

where the plaintiff's "'muscle grade strength' was assessed as '4/5 lumbosacral paraspinals'").

Ms. Gray cites no other evidence, and the Court has found none, suggesting that she

demonstrated the level of motor loss required to satisfy Listing 1.04A at any point, much less for

a continuous twelve-month period.

Accordingly, the Court finds the ALJ's determination that Ms. Gray's spine impairments

did not meet or medically equal Listing 1.04A was supported by substantial evidence.

### 2. **The ALJ's RFC Determination**

As a threshold matter, the Court finds that the ALJ failed to adequately develop the record with respect to Ms. Gray's physical impairments and opinion evidence regarding her ability to perform the standing and walking requirements of light work.  As a result, the Court is unable to conclude that the ALJ's RFC determination is supported by substantial evidence, and remand is required to allow the ALJ to develop the record.  See Rosa, 168 F.3d at 79 (explaining that whether the ALJ has satisfied the duty to develop the record is a threshold question); Laureano v. Comm'r of Soc. Sec., No. 17 Civ.1347 (SDA), 2018 WL 4629125, at *11 (S.D.N.Y. Sept. 26, 2018) (remanding where ALJ failed to adequately develop record as to claimant's impairments and opinions of claimant's treating sources).

### a. **RFC determination standard**

The RFC determination represents "the most [a claimant] can still do despite [her] limitations," based on all the relevant evidence in the record.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  It reflects the Commissioner's assessment of "the 'nature and extent' of a claimant's physical limitations and capacity for work activity on a regular and continuing basis." Elliott v. Colvin, No. 13-CV-2673 (MKB), 2014 WL 4793452, at *19 (E.D.N.Y. Sept. 24, 2014) (quoting 20 CFR § 404.1545(b)); see 20 C.F.R. § 416.945(b).

"Substantial evidence must support the ALJ's RFC determination, and the failure to point to medical evidence supporting the RFC determination is a ground for remand."  Izzo v. Saul, No. 18 Civ. 9681 (NSR) (JCM), 2019 WL 8989863, at *17 (S.D.N.Y. Dec. 9, 2019).  "An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of [the] claimant's work-related capabilities."

Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) (finding that, "[f]or the ALJ to make a proper determination about [the plaintiff]'s residual functional capacity to engage in sedentary work, he was required to review evidence that showed whether she could sit for six hours of an eight hour workday, do a certain amount of walking and standing, and lift up to ten pounds"); see Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (explaining that ALJ's RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence").

"Before an ALJ can determine a claimant's RFC based on exertional levels (sedentary, light, medium, heavy, or very heavy), 'he must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Gomez v. Saul, No. 19 Civ. 4708 (ALC), 2021 WL 1172674, at *13 (S.D.N.Y. Mar. 29, 2021) (quoting Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013); see SSR 96-8p, 1996 WL 374184, at *1 ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR [§§]404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."). "The Second Circuit has refused to adopt a 'per se' rule which warrants remand simply because an ALJ has not made an 'explicit' function-by-function analysis." Gomez, 2021 WL 1172674, at *13 (quoting Cichocki, 729 F.3d at 176). "However, 'remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki, 729 F.3d at 177).

**b. Analysis**

The Court agrees with Ms. Gray that the ALJ's RFC determination was not supported by substantial evidence, because the ALJ failed to adequately develop the Record with respect to Ms. Gray's work-related standing and walking limitations. ALJ Alger found that Ms. Gray had the following severe impairments: degenerative disease of both the cervical and lumbar spine; arthritis of the left knee and left ankle; status-post right rotator cuff repair; and obesity. (R. 13–16). Notwithstanding these findings, the ALJ concluded that Ms. Gray was not disabled because she had the ability to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" except for certain limitations with respect to overhead work, climbing ramps, stairs, ladders, ropes, and scaffolds, and bending stooping, crouching, kneeling, and crawling. (R. 17–18).

As discussed above, "a job is in [the light-work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). SSR 83-10 expands on the walking and standing requirements of light work, and provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6. Accordingly, by imposing no limitations on Ms. Gray's ability to stand or walk, the ALJ determined that Ms. Gray could stand or walk for six out of eight hours in a workday. Substantial evidence does not support that conclusion.

The ALJ summarized the basis for his RFC determination as follows:

In sum, the above [RFC] assessment is supported by the evidence of record as a whole. This evidence showed that [Ms. Gray] experienced some pain, tenderness, and a reduced range of motion of the upper and lower back, left knee and ankle, and right shoulder along with an antalgic gait at times due to her severe physical conditions, but also showed that she often appeared in no acute distress with full strength of the extremities, that she often had a normal gait, and that she could

23

> cook, clean, wash laundry, shop, groom and dress herself, and use public transportation despite her complaints of limitation ([R. 212–19; 266–410; 418–38; 441–78; 486–627]).   The [ALJ] has also considered [Ms. Gray]'s testimony regarding subjective complaints of pain and limitation.  The evidence of record as a whole supports a finding that [Ms. Gray] is limited to the light exertional level with the identified postural and non-exertional limitations in the above [RFC]. Further, due to her reduced range of motion of the right shoulder, [Ms. Gray] could not perform overhead work activity with the right upper extremity. In addition, the identified limitations in the above [RFC] are partially supported by the opinions of Dr. Meisel and Dr. Themistocle.

(R. 23).  The ALJ failed, however, to provide any specific assessment of Ms. Gray's ability to perform the walking and standing requirements of light work.  Indeed, the Record contains no medical source statement or other RFC assessment explicitly indicating that Ms. Gray can stand or walk for six hours.  The lack of medical evidence reflecting Ms. Gray's ability to perform light work prevents the Court from performing meaningful review of the ALJ's RFC determination, and remand for further development of the Record is therefore warranted.  See Cichocki, 729 F.3d at 177 (explaining that remand is appropriate where gaps in ALJ's RFC analysis "frustrate meaningful review").

The ALJ indicated that his RFC determination was "partially supported by the opinions of Dr. Meisel and Dr. Themistocle."  (R. 23).  Neither opinion, however, provides substantial evidence for the conclusion that Ms. Gray can stand or walk for six hours in an eight-hour workday.  The Court addresses each opinion in turn.

Dr. Meisel opined, inter alia, that Ms. Gray had "mild" limitations in her ability to stand and walk.  (R. 406).  Aside from this description, however, Dr. Meisel did not assess Ms. Gray's ability to perform these functions for any duration.  "The Second Circuit has held that when compiling an RFC from the record, an ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information."  Cooper v. Saul, 444 F. Supp. 3d 565, 579

(S.D.N.Y. 2020) (quoting Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) (such terms are "so vague as to render [them] useless")).  Here, the Court finds no additional information in Dr. Meisel's opinion—or elsewhere in the Record—indicating that Ms. Gray is capable of performing the standing and walking requirements for light work.  To the contrary, Dr. Meisel's opinion reflects Ms. Gray's complaints that "prolonged standing aggravate[d] her pain" and that she was only able to "walk two blocks."  (R.406).  Similarly, Dr. Meisel's examination of Ms. Gray revealed limited range of motion, swelling, and tenderness in her left ankle and knee (R. 408), all of which suggest a diminished capacity for prolonged standing and walking.  Accordingly, the Court finds that Dr. Meisel's use of the term "mild" to describe Ms. Gray's standing and walking limitations "is vague and provides no support for the ALJ's conclusion that [she can] engage in these activities for six hours out of an eight hour day."  Garretto v. Colvin, No. 15 Civ. 8734 (HBP), 2017 WL 1131906, at *21 (S.D.N.Y. Mar. 27, 2017); see Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (finding consultative examiner's opinion that the plaintiff "should be able to lift . . .  objects of a mild degree of weight on an intermittent basis" to be "remarkably vague" and "left to the ALJ's sheer speculation[,]" and noting that "[a]t a minimum, the ALJ likely should have contacted [the consultative examiner]  and sought clarification of his report"); Calo v. Comm'r of Soc. Sec., No. 20-CV-3559 (AMD), 2021 WL 3617478, at *4 (E.D.N.Y. Aug. 16, 2021) ("[The consultative examiner]'s finding of 'moderate' limitations on the plaintiff's ability to sit, without more, does not provide substantial support for the ALJ's conclusion that she could sit for six hours a day."); Arzu v. Saul, No. 19 Civ. 6451 (VSB) (BCM), 2020 WL 9596205, at *18 (S.D.N.Y. Nov. 20, 2020) ("[The consultative examiner]'s opinion — particularly as to [the] plaintiff's ability to stand and walk for long enough to perform light work — is couched in terms so vague as to render it useless

in evaluating the [plaintiff]'s residual functional capacity.") (internal quotation and citation omitted), adopted by, 2021 WL 1947290 (S.D.N.Y. May 12, 2021); Cooper, 444 F. Supp. 3d at 579 ("There is simply insufficient information in [the consultative examiner]'s four-page opinion to allow a finding that  can sit for a six-hour period.").

Moreover, as Ms. Gray points out (ECF No. 14 at 8, 12), Dr. Meisel examined her on November 17, 2016 (R. 406), over two and a half years before the ALJ issued his decision on May 23, 2019 (R. 25).  In the time between Dr. Meisel's examination and the ALJ Decision, Ms. Gray underwent ankle surgery (R. 580–81) and began treating with Dr. Themistocle "for pain management consultation and further treatment regarding [her] neck and lower back pain." (R. 441).  Subsequent medical records also show, inter alia, that Ms. Gray continued to complain that her pain was aggravated by walking and standing beyond 20 minutes (R. 469, 473, 488, 531), and that she was diagnosed with "probable radiculopathy and/or disk disease" in her cervical and lumbar spine, indicating that her spine impairments may have deteriorated after Dr. Meisel's examination.  (R. 505, 507).  Thus, even if Dr. Meisel had offered a specific assessment of Ms. Gray's abilities to stand and walk, the date of his opinion alone undermines any claim that it constitutes substantial evidence.  See Chambers v. Comm'r of Soc. Sec., No. 19 Civ. 2145 (RWL), 2020 WL 5628052, at *12 (S.D.N.Y. Sept. 21, 2020) (finding ALJ erred by giving "great weight to opinions that did not take account of any records or medical events possibly demonstrating [the plaintiff's] deterioration over approximately two-and-a-half years of the approximately three-and-a-half year [relevant time] period"); Caban v. Comm'r of Soc. Sec., No. 18-CV-929 (PKC), 2019 WL 4254000, at *4–5 (E.D.N.Y. Sept. 9, 2019) (remanding for failure "to solicit updated and current medical opinions from Plaintiff's treating sources or from consultative examiners or any

expert, following the progression of Plaintiff's symptoms after her February 2015 surgery"); <u>Clute ex rel. McGuire v. Comm'r of Soc. Sec.</u>, No. 18-CV-30-FPG, 2018 WL 6715361, at *5 (W.D.N.Y. Dec. 21, 2018) ("A stale medical opinion does not constitute substantial evidence to support an ALJ's findings."); <u>Whitsett v. Berryhill</u>, No. 17-CV-00416F, 2019 WL 156261, at *4 (W.D.N.Y. Jan. 9, 2019) ("A medical opinion 'may be stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision.'") (quoting <u>Clute</u>, 2018 WL 6715361, at *5).

Dr. Themistocle's opinions also do not support the ALJ's RFC determination with respect to Ms. Gray's standing and walking capabilities. To the contrary, in the only functional assessment he offered, Dr. Themistocle opined that Ms. Gray was limited to less than sedentary work. (R. 481). More specifically, he opined that Ms. Gray could stand and walk only "occasionally," <u>i.e.</u>, "up to 1/3 of the time." (R. 481). According to SSR 83-10, this amounts to "no more than about 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5. Thus, far from constituting substantial evidence in support, this aspect of Dr. Themistocle's opinion directly contradicts, and therefore undermines, the ALJ's determination that Ms. Gray was capable of performing light work.

The ALJ's failure to properly consider Dr. Themistocle's opinion resulted in an underdeveloped record. Without explicitly rejecting Dr. Themistocle's opinion concerning Ms. Gray's ability to stand or walk, ALJ Alger concluded that Dr. Themistocle "offered no objective findings to support the conclusions contained in [the May 2018 Assessment], and he failed to explain his statements of disability or support them with explanation or objective findings . . . ." (R. 22). However, given the lack of other functional assessments in the Record regarding Ms.

Gray's walking and standing limitations, the ALJ should have asked Dr. Themistocles to clarify his opinion before implicitly rejecting it.  The ALJ's failure to do so "rendered the record incomplete." Laureano, 2018 WL 4629125, at *13; see Alessi v. Colvin, No. 14-CV-7220 (WFK), 2015 WL 8481883, at *6 (E.D.N.Y. Dec. 9, 2015) ("[G]iven the gaps in the record and the absence of a thorough and sufficient medical assessment of Plaintiff's ability to sit, stand, walk, or lift from any physician who had seen the lumbar and cervical MRIs, the ALJ committed legal error by deciding Plaintiff could perform past relevant work without seeking to fill this gap.").  This is especially true given the ALJ's acknowledgment that "Dr. Themistocle is a treating source with a longitudinal history of treating [Ms. Gray]'s conditions . . . ."  (R. 22); see Burke v. Comm'r of Soc. Sec., No. 16 Civ. 6520 (KMK) (PED), 2017 WL 6029166, at *3 (S.D.N.Y. Dec. 5, 2017) ("[T]he ALJ must 'seek additional evidence or clarification where the documentation from a claimant's treating physician, psychologist, or other medical source is inadequate to determine whether the claimant is disabled.'") (quoting Velez v. Colvin, No. 14 Civ. 3084, 2017 WL 1831103, at *15 (S.D.N.Y. May 5, 2017)).

Finally, to the extent ALJ Alger relied on isolated medical findings in the Record to formulate Ms. Gray's RFC, this, too, was error.  "ALJs may not, of course, 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record." Manzella v. Comm'r of Soc. Sec., No. 20 Civ. 3765 (VEC) (SLC), 2021 WL 5910648, at *14 (S.D.N.Y. Oct. 27, 2021) (quotation omitted), adopted by, No. 20 Civ. 3765 (VEC) (SLC), 2021 WL 5493186 (S.D.N.Y. Nov. 22, 2021). "It is well-established that an ALJ is not 'permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.'"  Id. (quoting Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations omitted); see Haynes

v. Berrihill, No. 1:17-cv-81 (MAT), 2018 WL 3544944, at *3 (W.D.N.Y. July 24, 2018) (explaining that "an ALJ is not qualified to assess a claimant's RFC based on bare medical findings"). "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). The question for the reviewing court "is whether the record contains a medical opinion from either a treating or examining source that indicates what the claimant can and cannot do." Norberto M. v. Saul, No. 3:20-cv-891 (SRU), 2021 WL 4472864, at *15 (D. Conn. Sept. 30, 2021); see Hooper v. Colvin, 199 F. Supp. 3d 796, 815 (S.D.N.Y. 2016) (remanding where ALJ "made [claimant's] disability determination based on a record devoid of any truly complete medical opinion"). As discussed above, with respect to Ms. Gray's standing and walking limitations, the answer to that question is no, and remand is therefore warranted for further development of the Record. See Van Dyne v. Saul, No. 20-CV-260 (MKB), 2021 WL 1210460, at *14 (E.D.N.Y. Mar. 31, 2021) ("Where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capacities such as those set out in 20 C.F.R. § 404.1567(a), the Commissioner may not make the connection himself.") (quotation and alterations omitted).

In sum, the Court finds that the ALJ failed to develop the Record with respect to Ms. Gray's ability to perform work-related standing and walking functions and that the RFC determination is therefore not supported by substantial evidence. Remand is thus required for the ALJ to obtain and up-to-date medical assessment of Ms. Gray's functional limitations, specifically with respect to her ability to stand and walk for prolonged durations.

### 3.  Ms. Gray's Remaining Arguments

Ms. Gray also challenges the ALJ's RFC determination on the basis that ALJ Alger: (i) failed to comply with Social Security Ruling ("SSR") 96-8p; (ii) mischaracterized the evidence; and (iii) failed to properly evaluate Ms. Gray's subjective complaints of pain.  (ECF No. 11 at 17–21). However, "[i]n light of remand for the ALJ's failure to develop the record, the Court need not separately address" these arguments.  Prieto v. Comm'r of Soc. Sec., No. 20 Civ. 3941 (RWL), 2021 WL 3475625, at *16 (S.D.N.Y. Aug. 6, 2021); see Schultz v. Saul, No. 18-CV-5919 (PKC), 2020 WL 5752138, at *3 n.7 (E.D.N.Y. Sept. 25, 2020) ("Because remand is warranted based on the ALJ's failure to accord proper weight to the medical evidence, the Court need not reach Plaintiff's arguments that the ALJ failed to consider the side effects of her medications and lower extremity impairments, or properly credit Plaintiff's statements regarding the severity of her pain and impairments.").  "Each of those issues should be re-evaluated on remand in the context of a fully developed record."  Prieto, 2021 WL 3475625, at *16.

### IV.    CONCLUSION

For the reasons set forth above, Ms. Gray's Motion is GRANTED, the Commissioner's Motion is DENIED, and the case is remanded to the SSA for further proceedings.  The Clerk of Court is respectfully directed to terminate ECF Nos. 10 and 12, and to close this case.

Dated:        New York, New York                    SO ORDERED.
              March 31, 2022

_____
SARAH L. CAVE
**United States Magistrate Judge**